UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

Deborah H. Herndon, trustee for the heirs
and next of kin of John Herndon, Jr.,
decedent,

    Plaintiff,

v.

Avera Marshall d/b/a Avera Marshall Regional
Medical Center, Avera McKennan, Christopher Gregory,
M.D, and Syed M. Hasan, M.D.,

    Defendants.

Civil Action No.

**COMPLAINT**

---

**PLAINTIFF DEMANDS TRIAL BY JURY**

---

Plaintiff, as and for her Complaint, states and alleges as follows:

## PARTIES

1.

Deborah H. Herndon, is the duly appointed trustee for the heirs and next of kin of John Herndon, Jr., decedent, having been appointed by the Lyon County District Court on May 2, 2018. Deborah H. Herndon resides in Michigan.

2.

At all times material herein, Defendant Avera Marshall was a corporation duly organized and existing under the laws of the State of Minnesota and was doing business as a health care facility in Minnesota as Avera Marshall Regional Medical Center, hereinafter Avera Marshall, and was engaged in the business and profession of caring for the ill, and held itself out to the public to be well-able to perform its functions as a health care provider and, specifically, that its

physicians and employees were well-able to perform the duties and responsibilities in the care of patients entrusted to such persons.

3.

At all times material herein, Defendant Avera McKennan was a corporation duly organized and existing under the laws of the State of South Dakota and was engaged in the business and profession of caring for the ill and, held itself out to the public to be well able to perform its functions as a health care provider and, specifically, that its physicians and employees were well able to perform the duties and responsibilities in the care of patients entrusted to such persons.

4.

At all times material herein, Defendant Christopher Gregory, M.D., was a physician duly licensed to practice medicine in the States of South Dakota and Minnesota and held himself out to possess that degree of skill, ability and learning common to medical practitioners nationwide and, in addition, held himself out to possess that degree of skill, ability and learning common to medical practitioners of Radiology, his particular specialty; at all times material herein, Christopher Gregory, M.D., was a resident of South Dakota and was an agent and/or employee of Avera McKennan and was acting within the scope of his agency and employment; that upon information and belief Christopher Gregory, M.D. practiced telemedicine and reviewed and interpreted medical films sent to him in South Dakota by Defendant Avera Marshall; that upon information and belief Christopher Gregory, M.D. dictated radiology reports which were sent from South Dakota to Avera McKennan which were relied upon by physicians at Avera McKennan, including Defendant Syed M. Hasan, M.D.

5.

At all times material herein, Defendant Syed M. Hasan, M.D., was a physician duly licensed to practice medicine in the State of Minnesota and held himself out to possess that degree of skill, ability and learning common to medical practitioners in the community and, in addition, held himself out to possess that degree of skill, ability and learning common to medical practitioners of Emergency Medicine, his particular specialty; at all times material herein, Syed M. Hasan, M.D., was an agent and/or employee of Avera Marshall and was acting within the scope of his agency and employment.

## JURISDICTION AND VENUE

6.

The Plaintiff is a citizen of the State of Michigan. The Defendant Avera Marshall is a Minnesota corporation with a principal office in Marshall, Minnesota. The Defendant Syed M. Hasan, M.D. is a resident of Minnesota. The Defendant Avera McKennan is a South Dakota corporation with its principal office in Yankton, South Dakota. The Defendant Christopher Gregory, M.D. is a resident of South Dakota. The incident that is the subject of this Complaint occurred in the State of Minnesota. Jurisdiction is based on diversity of citizenship within the meaning of U.S.C. § 1332 and the amount in controversy, without interest and costs, exceeds the sum or value of $75,000.00.

## FACTS

7.

On February 14, 2017, John Herndon, Jr., age 22, died from a ruptured ascending aortic aneurysm.

8.

On February 9, 2017, decedent, John J. Herndon, Jr., presented to Avera Marshall Emergency Department and was assessed at 01:14 for complaints of sharp chest pain with pressure in the middle of his chest, which had been preceded by a couple of months of generalized chest pain. The level of pain was 10 out of 10 and substernal as to location. There was no accompanying or preceding activity at onset and had occurred when the decedent was about to go to sleep. Mr. Herndon's vital signs were: at 1:10 a.m., his blood pressure was 167/116 with a pulse of 83 and respirations of 24; at 1:24 a.m., he had a blood pressure of 159/87, pulse of 93, and respirations 24; and at 1:29 a.m., his blood pressure was 149/96, pulse of 78, and respirations 22. Abnormal lab results included a white Blood Count 14.5; a Mean Corpuscular Hemoglobin 36.1; Absolute Neutrophil 7.40; Creatinine 1.7; Glucose 134; and Albumin/Globular ratio .9.

9.

During Mr. Herndon's presentation at the Emergency Department, a chest PA and lateral x-ray was performed and interpreted by Christopher Gregory, M.D., which in pertinent part stated: "Findings: The thoracic aorta and mediastinum appear unremarkable; slight soft tissue prominence in the area of the superior RIGHT hilum on the frontal view is believed to be due to normal variation appearance rather than an abnormal ascending aneurysm or other mediastinal-

hilar mass." "Impression: If there is high clinical concern, then the patient may benefit from chest CT scanning for further evaluation."

10.

At 2:41 a.m., on February 9, 2017, Syed M. Hasan, M.D., the Emergency Medicine attending physician, discharged Mr. Herndon with an impression of "atypical chest pain of unknown cause." The patient was discharged to follow-up with his primary care physician as needed. He had been given 1 dose of Nitroglycerin, which provided some mild relief and 4 tablets of 81 mg Aspirin. There was no follow-up CT of Mr. Herndon's chest to investigate whether the prominence in the area of the Right hilum was what was assumed to be a "normal variation" as opposed to an abnormal ascending aneurysm in the face of significantly elevated blood pressures and pulse.

11.

On February 14, 2017, while at a wheelchair basketball practice at Southwest Minnesota State University, Mr. Herndon slumped over in his wheelchair and became unresponsive. He was dead on the scene. His body was transported to Ramsey County Medical Examiner's Office. Examination by K. M. Mills, M.D., Principal Assistant Medical Examiner, concluded that Mr. Herndon's cause of death was a ruptured ascending aortic aneurysm.

12.

Christopher Gregory, M.D. and Syed M. Hasan, M.D., and each of them, were negligent and careless in the care and treatment of the decedent, including, but not limited to, the following: failure of Dr. Gregory to interpret chest x-ray findings in the face of significant chest pain to have a high degree of suspicion with a differential diagnosis that could explain the significant chest pain, which would have to include aortic dissection, aneurysm, or other

potentially fatal vascular pathology; failure of Dr. Gregory to properly diagnose and order further testing, including, but not limited to, a CT of the chest, to investigate the soft tissue prominence in the area of the superior Right hilum on the frontal view, which Dr. Gregory mistakenly and in a deviation of the standard of care assumed or "believed" to be a "normal variation appearance rather than abnormal ascending aneurysm or other mediastinal-hilar mass"; Dr. Gregory's assumption and belief that this prominence was a "normal variation" as opposed to an abnormal aortic ascending aneurysm, was not based upon any objective evidence and was simply an erroneous assumption; in the face of even the possibility that this variation was an abnormal ascending aortic aneurysm, in the clinical context of this patient and due to the life threatening condition which such would present, Dr. Gregory's failure to order a CT scan to further investigate this finding was a breach of the applicable standard of care; further, the standard of care required Dr. Gregory to have interpreted the variation as either an abnormal ascending aortic aneurysm, or minimally a potentially abnormal ascending aortic aneurysm, which would require follow-up imaging, to-wit a chest CT scan to rule out an aneurysm and/or to recommend to Dr. Hasan that said imaging be ordered and performed; Dr. Gregory's failure to inquire directly with the emergency department physician, Dr. Hasan, as to whether Dr. Hasan included in his differential diagnosis an aortic aneurysm, and if so, to advise Dr. Hasan to order a chest CT scan to rule it out; the aforementioned failures constituted deviation from applicable standards of care in the field of radiology and specifically in the context of a patient presenting with significant chest pain; Dr. Gregory's failure to recommend and/or order a follow-up CT scan and to investigate the possibility of an ascending aortic aneurysm constituted negligence and carelessness by him and, thereby, his employer or agent, Avera Marshall.

Further, Syed M. Hasan, M.D., was negligent and careless in the care and treatment of the decedent, including, but not limited to, breaches of the applicable standard of care by the decedent, including, but not limited to, breaches of the applicable standard of care by failing to appropriately correlate the findings of the chest x-ray and various signs and symptoms with which Mr. Herndon presented, specifically significantly elevated blood pressures of 167/116, 159/87 and 149/96, along with other abnormal lab results in the context of a 10 out of 10 pain of substernal sharp sudden onset chest pain with which he presented in the middle of the night that was not related to any activity or trauma; further failing to appropriately correlate this clinical presentation with an equivocal interpretation by the radiologist which made reference to a prominence in the area of the superior right hilum, as well as an assumption that said was "normal variation" as opposed to an abnormal ascending aneurysm minimally raising the potential of a life threatening condition of an abnormal ascending aneurysm, which the standard of care required Dr. Hasan to further investigate to rule out a life threatening condition of an abnormal ascending aortic aneurysm by ordering a follow-up chest CT scan.

13.

As a direct and proximate result of the professional negligence and carelessness of Christopher Gregory, M.D. and Syed M. Hasan, M.D., and each of them, and thereby their principals and/or employers, and through them by a theory of *Respondeat Superior,* Avera Marshall and Avera McKennan, plaintiff's decedent sustained injuries which caused his wrongful death, to-wit a ruptured ascending aortic aneurysm, which occurred suddenly instantly killing Mr. Herndon on February 14, 2017; and as a further result, the heirs and next of kin have suffered a loss of society and companionship and incurred expenses including funeral expenses, and having sustained pecuniary loss within the meaning of Minn. Stat. § 573.02 and were

otherwise damaged in a reasonable amount in excess of Seventy-Five Thousand and no/100 Dollars ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, in an amount in excess of $75,000.00, together with costs, disbursements, prejudgment interest and such other and further relief as is just and equitable.

MESHBESHER & SPENCE, LTD.

Dated: 7/10/18

By _____
Joshua M. Tuchscherer, #314250
Michael C. Snyder, #140648
1616 Park Avenue
Minneapolis, MN 55404
Telephone: 612-339-9121
Facsimile: 612-339-9188
jmt@meshbesher.com

ATTORNEYS FOR PLAINITFF

ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

_____
Joshua M. Tuchscherer